21-14-49, Glacier Northwest v. Int'l Brotherhood of Teamsters. Mr. Francisco. Mr. Chief Justice, and may it please the Court. The Court and the Board have long recognized that the intentional destruction of an employer's property in the course of a labor dispute is not protected concerted activity. That's why steel workers can't walk out in the middle of a molten iron pour. It's why Federal security guards can't leave their posts in the middle of a terrorist threat. It's why a ferry boat crew can't drive their boat out into the middle of the river and abandon ship. And it's why, in this very case, the government agrees that the conduct alleged in this complaint isn't even arguably protected. The more substantial question, then, is who gets to decide whether the facts alleged in the complaint are true? The State Court or the Board? This Court answered that question in Bill Johnson's. If the facts alleged aren't even arguably protected, then the Court decides the facts. If the allegations are true, it can award relief. And if they're not, the claim fails, either because it's preempted or because it fails under State law. This division of authority makes sense. Garmon held that the Board's interest in ensuring a uniform legal interpretation of the statute is sufficient to override the State's interest in adjudicating State tort claims. But it doesn't have a similar interest in resolving the facts. So if the complaint alleges clearly unprotected conduct, and the only issue is whether those allegations are true, the State Court gets first crack at resolving the facts. That's probably why, in this very case, the Regional Director didn't even file his complaint until after the Washington Supreme Court's decision. Instead of at the outset, which, under the Union's view, would have prevented four years of wasteful litigation. The Court should, therefore, reverse the decision below and allow the State Courts to adjudicate Glacier's non-preempted State court complaint. And I'd be happy to address any questions your honors may have. The SG suggests that after a hiatus, a jurisdictional hiatus, you could pursue your claims. Why isn't that adequate? Because, for a couple of reasons, your honor. I think principally because it's contrary to how preemption works in virtually every other context. State courts are not typically ousted of jurisdiction to adjudicate tort claims, even in highly regulated areas. Instead, they adjudicate the tort claim, but they're still bound by federal law. So if it appears that the claim conflicts with federal law, they grant the preemption defense. Under Garment, if it appears that it arguably conflicts with federal law, they grant the preemption defense. But they're not ousted of jurisdiction to make that threshold determination of whether on the facts it either actually or arguably implicates federal law. Otherwise, Bill Johnson's really should have come out the other way. Because in Bill Johnson's, the Board actually found that the employer's allegations in his complaint were false. And that the employee was engaging in actually protected conduct. Yet this court nonetheless held that it was the state court that got to decide the facts in the first instance, not the Board. The Board, of course, says that you should, I guess, bring your claim under the rubric of the failure to take reasonable precautions to preserve property. Why is that not sufficient to address your concerns? Well, your honor, it's not that I have a problem with the Board's test. I just think that our test is a much more specific, concrete, and clear application of that test. I mean, it's hard to imagine a situation where you intend to destroy somebody's property. You actually take actions to effectuate that intent. You succeed in destroying the property. Yet nonetheless, you have taken reasonable precautions to avoid destroying the property. So I just think it's a particularly clear application. And I will point you to the Board's decision in the International Protective Services case, which helps illustrate this. Now remember, that was the case where the federal security guards at the courthouse in Alaska walked out in the middle of a terrorist threat. The Board first applied the reasonable precautions standard and said, look, you didn't take reasonable precautions. But then it went further and it said, here I'm quoting, the Union's misconduct went beyond a failure to take reasonable precautions. And the Board continued, it established that the Union recklessly intended to place the federal buildings and their occupants at risk. Because, the Board concluded, the strike was, quote, designed to compromise their security. So again, I think it just illustrates that we've got a particularly clear and concrete application of that test. Or an alternative one. I guess I'm not sure I understand your answer to the question. Whether you think that your test captures conduct that the reasonable precautions test does not. So in your latter half of the answer, you suggested yes. I took the former half to say no. So maybe I was just misunderstanding. But does it go further? Does it capture conduct that you think the Board's test does not? So it's hard for me to think of in my head a set of facts that would be captured by our test, but not their test. So in that sense, I do think that our test is a subset of their test. It's a subset of their test. I think so. But you might be able to come up with a set of facts where there's not overlap. So if that's the case, why shouldn't we use the doctrine, the standard, the words that have always been used in this sphere before? I think the main reason is that when you've got something as clear as this, something as egregious as intentional property destruction, it's important to take that clear category of misconduct off the table. Look, we're dealing with ongoing negotiations here. And the parties need to know the rules of the road. What are legitimate tactics in the course of a lawful negotiation? I worry that something as nebulous as reasonable precautions doesn't really give the parties the guidance they need. Mr. Francisco, I thought that reasonable precautions was fairly clear. The one items that the board has said are not covered are those where an individual, a union member, is acting in a way that any citizen in the same position would have been held responsible for. So if you libel somebody, it's not just you, but any other citizen with no legal obligation to you would be liable. Similarly, no person who's on strike or not can impose intentionally emotional distress. All right? Those are things that categorically we say can't be arguably protected. But when it comes to destruction of property, I always thought you needed a duty that you're breaching. If an employee goes on strike, their duty to you has ended. I can walk by your plant and the parking lot and see those trucks running. I have no obligation to tell you there's cement in there. I have no obligation to move the truck. I have no obligation to do anything. That's what the employees at that moment, they went on strike. What the government is saying, however, is intentional destruction of property means that I'm taking an affirmative act, not just merely the property perishing on its own. So I don't know why you're answering, Justice Kagan. You want something further. You're saying you as an employee have to continue an employment duty with me until all of my profits are safe. That's what I said. Not in the slightest am I suggesting that, Your Honor. Here, the employees took affirmative action. The union took affirmative action to put the product in a vulnerable position precisely so that you're standing it to spoil. But you're saying, well, could a state tell the union, don't go on strike except at the end of the day? No, Your Honor. What I'm saying is— Well, what's the difference between that and saying, Don't go on strike while the truck has cement that you can upload if you want. You can hire people to offload it. You can do what you did, and it's your property. The moment I walked out on strike, I didn't owe you a duty to protect your property from self-perishment. So it's the same principle that would prevent the ferry boat crew from driving the boat into the middle of the river and then merely going on strike. Because that's very different in that you have no opportunity to save that property. But here, that's not the case. Here, you'd want them to continue working. That most manifestly is the case here, Your Honor. So what do we do with the NLRB case of the cheese people that left in the middle of the cheese processing? Sure. So a couple of responses. Or flower delivery or any other perishment of a property. Yeah. So first, in that case, there was no allegation of an intent to destroy property. If I recall— Well, I mean, you're not—the intent is leaving. Mr. Francesco, can I ask you, following up on Justice Sotomayor, if we just put aside the reasonable precautions versus intentional tests. Let's say that we decide to stick with the board's formulation of reasonable precautions. Can you talk a little bit more about this jurisdictional hiatus principle? Because it seems to me that if conduct is arguably protected, that might be because of a dispute about the law. Like, we're not sure what the statute means. Or it might mean because there's a dispute about the facts. Right. And so the government points out that the standard for a motion to dismiss assumes the facts are true, that the board here is engaged in some factual discovery, and showed that maybe that's not as clear-cut as it might reflect on the pleading. So can you address that? I think it addresses whether there's a dispute about the law. And I think it makes sense when you understand Garment in the context of how preemption works in virtually every other context. State courts adjudicate tort claims all the time, including in areas of intense federal regulation. But they're still bound by federal law. So a state court will adjudicate the claim, and on the motion to dismiss it will look at the facts alleged, and it will say, is there a conflict with federal law? Or in the case of Garment, is there an arguable conflict with federal law? Doesn't Garment do something a little bit different? Didn't Garment route both these potentially factual disputes and legal disputes? Garment is a very different kind of – well, not very different, but it's certainly a different and more expansive kind of preemption. It is a different kind of preemption, but not in the way I think Your Honor is suggesting. What Garment did was it said that in addition to having to grant a preemption defense in the face of an actual conflict – that's the rule virtually everywhere else – you also have to grant a preemption defense in the face of an arguable conflict. But I don't understand Garment to be a wholesale overturning of how preemption works in every other context. And in every other context, states' courts still get to adjudicate the claim, and they grant a preemption defense once it becomes clear that on the facts alleged or the facts proved, there's either an arguable conflict or an actual conflict with federal law. So it's summary judgment, then. You know, there's summary judgment, then that would be the time – Absolutely. Okay. If at summary judgment it became clear that on the facts, you know, under the applicable summary judgment standard there was an arguable conflict, you grant the preemption defense at that time. Mr. Conforto, in this situation we have a complaint by the regional director. And I guess I'm a little confused as to why you think or your brief suggests that that's irrelevant to the issue of whether or not there is an arguable protected scenario here. Yeah, sure, for two reasons, Your Honor. First, theoretical, and second, from the case law. The theoretical reason is that the board's overriding interest is ensuring a legally uniform interpretation of the NLRA. That's why its interest is sufficient to override the state's interest in adjudicating a tort claim where the actual facts are arguably protected. The board then gets to determine whether the actual facts are actually protected as opposed to arguably protected. Second is the case law reason. Bill Johnson – Can I just – I'm sorry, I'm not sure that I understood the reasons for arguably protected in the same way. I thought arguably protected was our recognition of Congress's intent to allow the board to take first crack at these kinds of scenarios. So what we say is as long as it is possible, it is arguable that we have protected conduct here, then the states need to stand down and allow the board to go forward. So I hear you sort of suggesting that the states can get to make that initial determination about arguable, and that's not how I understood what was happening. Well, Your Honor, I think I do have a slightly different understanding of it than you do. The states always, almost always in these cases, make the threshold determination as to whether the alleged facts are arguably protected under the NLRA. Because there's going to be a dispute about whether or not they should step aside, not because they inherently are the ones to make that determination. Sure, and I think that the way I understand, Carmen, at least, is that when you've got a set of facts, and on those facts there's an arguable conflict with the federal statute, it's the board that gets first crack at determining whether it's in fact an actual conflict. But the board's assessment by the filing of a complaint that here we arguably, this is the regional director and the general counsel, they've looked at all the facts, and they file a complaint which indicates that someone has made an initial assessment along the same lines as arguable that we have protected conduct here. I don't understand why the easiest way for all of us to be looking at this is in this particular kind of scenario where we have a complaint, then the issue of arguable is satisfied, and we allow the board to continue to investigate, and it can reach the actual determination that you're talking about. I think it's because we'd be taking the extraordinary step of ousting a state court of jurisdiction to adjudicate a state tort complaint that on its face, alleges facts that is all agreed and aren't even arguably protected. The government says that all the state court has to do is stay the action pending the board's determination. So I don't understand what you're talking about, ousting jurisdiction. Now, when I was a federal court judge, I could dismiss the action pending the board decision, or I could stay the action. It wasn't that I was ousting jurisdiction, but I was giving Garmin's primary jurisdiction to the board. Well, sure, Your Honor. What we're suggesting is that in the context of where you have a complaint, state law complaint that on its face alleges conduct that both we and the government agree is not even arguably protected, then our position is it's the flip side of the government. State courts get to proceed in the ordinary course, just like they do in virtually every other area of preemption law. Why is it? I'm sorry, Mr. Fentz. I was going to say, with respect, I don't know how Bill Johnson's could have come out the way that it did if what I was saying wasn't accurate, because there, the board actually entered findings, findings that the employer's complaint, his malicious libel complaint, was false. The facts were false, and that the employee was, in fact, engaging in protection. So why is it that there is such a sharp distinction in your mind between the legal questions and the factual questions? I mean, I suspect in most of these cases what is going to happen in the end is that it's going, the critical question is going to be a mixed question of law and fact, and whoever is the decision maker is going to have to figure out what the appropriate law is and is going to have to figure out what the appropriate facts are and apply the one to the other. And I would think that as a controversy gets more and more factual, you might think that that's where the board's expertise more and more comes into play, because the board has seen like a thousand of these strikes in a different way, like a general court sees once every few years they get a case like this. The board has seen thousands of them and can fit a case like this into a broader map of strike conduct and what's protected and what's not. And it would seem that if the idea of Garmin is a little bit of an exhaustion idea, first bite idea to get your expertise, your special expertise, it should apply all the more so in a case where there are also factual issues at stake. So I've got two responses to that, Your Honor. The first is that on the fact law question, I agree to this extent. If it becomes clear, as the state court finds the facts, that it's unclear whether it actually is protected by the statute, then you kick it over to the board because it's arguably protected. That's the work that Garmin does, but I don't think it overrides the state court's traditional fact-finding function. My second point, which is related, is I guess maybe I just don't understand Garmin. It seems very artificial. You know, you find the facts until you face the dispositive question of how the facts fit the law. Sure, and this is my second response to your question. I don't understand Garmin to be as strong an overturning of traditional preemption principles as you're suggesting, because what I'm suggesting is how preemption works in virtually every other area, including highly federally regulated areas. You always have state courts adjudicating state tort claims. They still are bound by federal law. So here the state court is still bound by the NLRA, including the board's reasonable interpretations of it. So if, as it adjudicates that case in the ordinary course, it becomes clear there's either an actual or under Garmin an arguable conflict, it's got to grant the preemption defense. But I do not understand Garmin to go further than that, and this court has never taken Garmin further than that, to say that state courts are also ousted of the traditional authority just to adjudicate that state tort complaint up and until a preemption defense is properly presented and established. And, again, I don't know how Bill Johnson's comes out the way it did unless you agree with me, because, again, in Bill Johnson's the board actually found that the facts in the employer's complaint were false. But there was no Garmin. There was not a Garmin issue in Bill Johnson, right? But that's only because it alleged conduct, malicious libel, that wasn't arguably protected. And here the government agrees with us that the conduct alleged in this complaint isn't arguably protected. The only issue is whether the board's disagreement over what the actual facts are, as opposed to the alleged facts, changes that. That was the exact posture of Bill Johnson's, where the board thought that the actual facts were different from the alleged facts, yet this court nonetheless held that it was up to the state court to determine what the actual facts were, not the board. That's all we're asking for here. And, again, I think it is a straightforward application of how preemption works in virtually every other context. Could a state court decide, if this was sent back to them, could the state court say what Justice Sotomayor suggested, which is, now that we have a pending complaint, we're going to step aside, either as a matter of abstention or whatever? Certainly not if you resolve this issue my way. And even if you just stay silent on it, I'll make the same argument anyhow. Why not? Because as a matter of federal law, if this court says that it's for the state court to decide and not the board, I don't know how the state court could then say otherwise. That's not what we'd be saying. We're talking about preemption here, meaning does the federal court or does the federal law preclude the state? What I'm asking is, fine, we say, even if we agree with you that Garvin preemption does not apply and, therefore, we return it to the state, could the state say, in light of the fact that the board is now considering this, we are going to abstain? Well, I think I understand the question. What I'm saying is if you issue an opinion along the lines of what you said in Bill Johnson's and what you say is that where there's this factual dispute, the board should stay its hand because it's up to the state court to determine what the facts are in the first instance. I don't think it would be up to the state court to say otherwise and to essentially thumb its nose at the court's decision. Put another way, I think it would be a gross abuse of discretion if the state court were to do that. Thank you, Counsel. Justice Thomas? Mr. Francisco, can you tell me any other area where preemption works as it works in this area? How does it normally work, let's say, in Wife or some of the other preemption cases? How does it come into play? So it normally works. I litigate a lot of cases, including in state courts, where they're subject to federal regulations. And typically, if the claim is filed in state court, somebody raises a preemption defense. At the motion to dismiss, the court assesses the complaint, resolves the facts most favorably to the non-moving party, and then says on those facts, is this conduct preempted? It either is or it isn't. Garmin takes it a step further. It moves that preemption analysis up not just to an actual conflict but also to an arguable conflict. That's Garmin's innovation. But I'm not aware of any case that has ever taken Garmin further than that and said that, in addition, we're depriving state courts of making the threshold factual determination in the first place. Now, look, the state court can get it wrong. State courts get it wrong all the time. It can get it wrong on the arguable protection prong. It can get it wrong on the actual protection prong. What I'm more interested in is the operation. Normally we get a preemption case and someone has asserted preemption as a defense to, say, for example, a state tort action. Right. But going back to your point about the determination of a preemption, of preemption, is there any case similar to this? I mean, we've had field preemption, obstacle preemption, conflict preemption. Is there any other case where we've had this arguably protected preemption? Not that I'm aware of, Your Honor. I don't know that the court has taken it beyond actual conflict. There is field preemption. But when you're talking about preemption based on a conflict with the law, I'm not aware of another area where we've said an arguable conflict also results in preemption. That's Garmin's innovation. Thank you. Justice Alito? Justice Sotomayor? I'm a little confused. This was decided on a motion to dismiss, correct? Yes, Your Honor. So there was no fact-finding or shouldn't be any fact-finding by the state court. The state court just has to read the complaint and see if there's an arguable basis for liability, correct? Correct. All right. Now, if the court does what the SG says and says, yes, there are some facts here that would suggest that this action wasn't preempted, now what happens? We'll go on to summary judgment. Assuming you do discovery or something. But then what happens, as occurred here, less than a month later, the board files a complaint. You seem to be suggesting that that's irrelevant. And why is that? Why can't that provide the basis for the district, for the court, to say, hmm, I see the facts as alleged by the NLRB. If the facts aren't that way, then this satisfies Garmin and this is arguably protected. I mean, that's basically, I think that's what Justice Jackson was trying to say to you, which is we're now at a point further than the motion to dismiss. We're at the point where the court should look at this now, the court below, think about what the SG is saying, and then decide what its next steps should be or not be. So my answer is you ought to proceed, as I'm suggesting, for basically the same reasons as Bill Johnson's. Now, look, if the NLRB general counsel actually has facts to come forward with that can be introduced in trial before the state court that then show you have conduct that is arguably protected at the summary judgment stage or at the trial stage, then I would agree at that point, then it would be appropriate to consider and if established, grant a preemption defense under Garmin. But it's still the state court's authority in the course of adjudicating a state tort claim to determine what the facts are and determine whether on those facts there's either arguable or actual protection under the statute. Again, it's how preemption works in just about every other area. Justice Kagan? I think this might be related, but when you were talking to Justice Thomas, you were in the middle of a sentence, and I was hanging on every word. And I want you to finish the sentence, if you can remember it, because you said something like, now look, the state court can get it wrong. So what's the end of that? State courts can certainly get both the actual protection question wrong and the arguable protection question wrong. We're here because we believe that the Washington State Supreme Court got the arguable protection wrong. But that's not unique to Garmin. That happens in all areas of potential federal preemption. The remedy is you come to this court when it arises out of the state courts, and you go to the courts of appeals when it arises out of the federal courts. I see. But to go back then to Justice Sotomayor's question, if the board now has done an investigation into this matter and has a different view of the facts than your client has, what is the relevance of that in the state court proceeding? I would think, as Justice Sotomayor was suggesting, that that's where, well, it becomes appropriate to say, no, now, you know, something has changed. And, again, so I have two responses. The first is that that's completely contrary to Bill Johnson's, because that's the exact situation. Okay, put the Bill Johnson aside. Secondly, what I would say is that the state court can certainly hand over those facts to the union, and those facts can be introduced in the state court proceeding. And if, based on those facts, it becomes clear at summary judgment or a later stage that there's arguable protection or actual protection, then you grant the preemption defense unless, of course, the local interest exception applies. But you proceed in the ordinary course the way you do in every other or almost every other federal preemption case. Justice Gorsuch, what's at stake in allowing state courts to proceed in the ordinary course, as you're talking about? The stake is that you preserve, one, the state's traditional authority to adjudicate tort claims. Preemption is a big deal. That's why we don't just assume preemption willy-nilly, and there are rules that make clear that preemption applies when certain clear statements are made. Now, I agree Garmon goes further, but it still respects the fact that state courts have an overriding interest in adjudicating state tort claims. The second stake is the plaintiff's right to petition the courts. You know, frankly, we prefer not to be before an administrative agency where the agency is the judge, jury, and executioner. We prefer to be in a court system where we have a neutral judge and the potential for a jury. And so that's why it also protects, as Bill Johnson's also made clear, the plaintiff's right to petition the courts for redress. What do you say to the argument that the NLRB has a lot of expertise in this area and does see a lot more of these cases than the state court? And that's precisely the work, I think, that the arguable protection prong does. If the facts show that the facts are arguably protected by the statute, then unless the local interest exception applies, it is the board that gets to decide whether it's not just arguable protection, but it's actual protection. But the board's interest in ensuring that legal uniformity isn't enough, in my view, to override the state's traditional interest in adjudicating tort claims up until the point where it becomes clear that on the actual facts there's either an arguable or an actual conflict with federal law. Again, it's how preemption generally works. And while the board does have strong interests here, federal agencies have strong interests in a lot of different areas, yet we don't do a wholesale overturning of how federal preemption works in those other areas. You keep talking about how federal preemption normally works, suggesting Garmin's a bit of an outlier, and we've been struggling this morning with understanding just how far its penumbras extend. I think that was out of Garmin itself. Does it extend so far as to require a hiatus of a state court proceeding, even when the pleadings are arguably outside of the statute? And I guess I'm wondering, do you still pursue the suggestion that we ought to rethink Garmin? Your Honor, we don't think that in order to resolve this case in favor of our client, you have to revisit Garmin. But what I am quite confident on is that you can either interpret Garmin as it stands as being a huge departure from ordinary principles or a medium departure from ordinary principles. Right now, I think it's a medium departure from ordinary principles. If you take it the step that my friends on the other side are suggesting and say that state courts are actually outside of the authority to make that basic factual determination of whether the facts do, in fact, arguably conflict with the law, then you're turning it into a huge departure from ordinary principles. So it's a medium penumbra, not a huge penumbra. Your words, Your Honor, are the court's words. Thank you. Justice Kavanaugh, Justice Barrett? I take it that your position means that if the board beats the state court to it, let's imagine that here the board concludes its proceedings first and decides that, in fact, your client had engaged in an unfair labor practice. That doesn't bind the state court. The state court can go on and continue to resolve the facts a different way. I think that's right, Your Honor. Our position is essentially the flip side of the governments and the unions. They claim that after four years of state court litigation, you can require the state courts to take a hiatus. Our position is that if you've got a state complaint that alleges clearly unprotected conduct, the state court gets to adjudicate it. Now, I think whatever the board found is going to be extraordinarily useful to the union in the state court proceedings, but I think that the state court still gets to proceed. Justice Jackson? Can I just get a clarification on Justice Barrett? I guess I'm not understanding what you mean. So if the board, before there's any tort suit brought, looks at this very situation and resolves it, what's your position about whether the tort suit can go afterwards? I think that the tort suit can go afterwards. You will have to deal with a couple of issues. You'd have to deal with whether there are any claim or issue preclusion issues that flow from the board's proceeding, and that's a pretty complicated area. You'd also have to deal with whatever evidence the board proceeding generated, which might well be extraordinarily useful to the union in the state court proceedings. All right, so then if that's the case, why are we talking in terms of ousting the state court of its jurisdiction, even in this regard? If it can go afterwards, then there really isn't, we're not really at base talking about Garmin being an ousting kind of thing. So I'll use a different term. You're forcing the state court to go on, to use their term, a jurisdictional hiatus. Again, not something that I'm aware that we do in virtually any other area of the country. But understanding that our precedent recognizes congressional intent to allow the board to develop a uniform body of law for the various reasons that Justice Kagan pointed out, that might be a good thing, but at least it looks as though that's what Congress intended. All right, so if that's the situation, and now we have precedent that allows for that kind of board taking the front lead on these things, I guess I'm a little confused about your suggestion that there is arguable protection versus actual protection as different kinds of analyses. I thought that this is a spectrum, that when it comes to the state court and the state court is asked to stand down, we have preemption. Instead of having to litigate the whole issue and get to make the determination about whether the conduct is actually protected, the state court can look at it and say, well, it looks arguable, and so that's enough. If I'm right about that, I'm still confused as to why an intervening board determination that we have protected conduct here would be irrelevant to the state's assessment of whether or not there's arguably protected conduct. Why that's problematic in any way. For a couple of reasons. First, to the extent you're focused on precedent, I'd make two points. One, Bill Johnson is the precedent of this court. Let's not focus on precedent. Let's focus on logic. If the opposite were true, if you find out in the course of the Garmin preemption debate that the board has taken a look at it and they have passed, they've taken a look at it and they've said somehow in a memo or whatever, we think this is not protected conduct, so we're not going to file a complaint. Are you saying that you would not bring that to the state court's attention as it addressed the Garmin situation? Wouldn't you say, look, look, the board says not protected, therefore, no Garmin? I guess if I could get that in under the rules of evidence, which I'm not sure I could. Right. It would be relevant. So my point is, why isn't the opposite relevant? They can still bring the evidence that, as I've been saying, they can still bring the evidence that the board found before the state court proceeding. And I would suspect that it would be pretty persuasive evidence if it were sufficient for the board to go the other way. All right. I just asked you about another way back to the beginning when we were talking about the difference between reasonable precaution and intentional destruction. I have to admit that I looked at your brief and I saw you pleading or arguing a subset, that intentional destruction was a subset of reasonable precaution. If I'm right about that, is reasonable precaution the broader standard? And couldn't we resolve it in your favor on what I thought was the narrower ground? Yes and yes. But the reason why I think it's important to get to the narrower ground is because if you just have this world of reasonable precautions, I do not believe that it gives unions or management sufficient guidance to know that a clear category of egregious conduct, where you actually intend to destroy property and you're successful in carrying out that intent, you're not giving them clear guidance that there's this particularly egregious category of conduct that's off the table. That's why I would suggest you do what the board did in the International Protective Services case. You could say something like, look, they failed the reasonable precautions test. And in particular, they failed the reasonable precautions test because, and here to quote, the union's misconduct went beyond a failure to take reasonable precautions and, quote, established that the union recklessly intended to place the federal buildings and their occupants at risk. I think that would be a perfectly appropriate resolution of this case. Thank you, counsel. Mr. Sherry? Mr. Chief Justice, and may it please the Court, I wonder if I could begin with the line of questioning that seems to have taken up most of the morning so far, namely this distinction between factual and legal issues, and explain why it is that we think even the factual issues should be resolved by the board. There are both legal and practical reasons for so holding, and contrary to what Mr. Francisco has said, I don't think Bill Johnson's decision stands in the way of that. If I could start with the legal reasons. The first and most important legal reason is this Court's decision in Longshoreman v. Davis. In that case, the Court said that Garmin preemption is established when the party asserting preemption presents evidence from which the board could reasonably conclude that the conduct is protected. And it separated that from a separate basis for establishing preemption, namely the party can offer a legal interpretation that the board could reasonably accept. So I think that decision pretty squarely establishes that the board is meant to resolve factual as well as legal disputes. And that's consistent with the structure of the statute. If you look at Sections 10E and 10F of the National Labor Relations Act, those provisions say that the board makes factual findings to be resolved under the substantial evidence standard. That suggests that Congress wanted the board to make these factual decisions as well as the legal ones. And that's for the practical reasons. If the state court gets the law wrong, then it won't be finding the right facts. In other words, if it misunderstands what the board's precedents require in a particular area, then it may focus on immaterial facts or ignore the material facts. And finally, just as an administrative matter, it's going to be very difficult to draw lines between mixed questions, legal questions, and factual questions. It's much easier simply to adopt a clear rule that the board resolves these arguable cases. Now, Mr. Francisco says that the Bill Johnson's decision supports his position, and I don't think that's right. The issue in Bill Johnson's is, under what circumstances can someone be punished simply for bringing a lawsuit? A Bill Johnson's claim is analogous to a malicious prosecution claim. It's a claim that you've brought a baseless charge for a retaliatory reason. And in that unique context, the court has said, there are First Amendment interests, right-to-petition interests that are in play, and in that context, we don't want the board making judgments before the state court in fact determines that the suit is baseless. There's nothing like that going on here, and therefore, the court should adopt the standards that it's— Well, Mr. Suri, your light is off, right? Yes. Okay. I mean, what you said about not making too much of the difference between facts and law in this area, you know, seems pretty sensible to me. But then I guess I'm a little bit confused about what you're suggesting the disposition in this case should be. Even putting aside the board complaint for the moment, and I want to hear your views about the relevance of the board complaint, but even putting that aside, it seems to me that what the trial court did here was to say, you know, there are a set of allegations, but I'm pretty convinced that there's a really murky, complicated, factual issue here. And so I don't want to take those allegations, just, you know, just assume that they're true. I really think that this is a case that ought to go to the board, because people are arguing right now about the facts and how the law applies to the facts, and I'm better off sending it over there. So if you are right about everything that you said, why wasn't that the right call? That may have been a sensible way to set up the preemption system in this area, but that's not the approach the court took in its decision in Longshoreman. The court said that the application of Garmin preemption does not depend on a predictive judgment by the court about whether facts are likely to be in dispute. Rather, the standard is whether a party has presented evidence from which the board could reasonably conclude that the conduct is protected. And in our view, that simply wasn't done here. So the court says that at the outset, or is supposed to, and you're saying it was wrong not to say it. And then what happens? As the suit goes forward, what's supposed to happen? May I suggest how we think this could and should perhaps have played out? The court has held that Garmin preemption is jurisdictional, a matter of subject matter jurisdiction. That's not just a drive-by holding. That's a square decision of this court. And what I understand Washington courts to allow, and most courts to allow, is that you can bring a factual 12B1 motion at the motion-to-dismiss stage. In other words, you don't just focus on the allegations and the complaint. You say, here's this additional evidence showing that the state lacks jurisdiction. And if that had been done, it would have been permissible for the state court to look outside the pleadings, look at this other evidence, and say, yes, there are factual disputes. And therefore, let's wait for the board to resolve them. You think, if I understand the position correctly, that Garmin does not cover the failure to take reasonable precautions to protect property, right? Yes, Mr. Chief Justice. Well, it seems to me that if it doesn't cover that, it surely cannot cover the intentional destruction of property. Does that seem reasonable? That certainly seems reasonable, but we have additional qualifiers on this reasonable precautions standard that illustrate the difference between it and Mr. Francisco's standard. The first is that our standard applies. Well, just to make sure we're walking down the same road here, what I'm looking for is reasons that intentional destruction of property would not follow a fortiori from failure to take reasonable precautions to protect property. It depends on what destruction means, Mr. Chief Justice. If by destruction you mean the type of imminent harm that we're talking about, then yes, we agree that intentional destruction is a subset of our standard. But it's not clear that Mr. Francisco's standard is limited to that type of imminent harm. For example, let us say that grocery workers walk out of the grocery store and the food in the store spoils. I'm not certain whether Mr. Francisco would describe that as destruction of property or not. Well, but I mean the same ambiguity, it seems to me, would accompany reasonable caution to preserve property. I mean, if you're striking against a grocer, maybe sure, it's sort of inevitable that the milk is going to go sour if you're not there. But, in other words, that ambiguity doesn't seem to me to justify the distinction between those two categories. And it is precisely to deal with that problem that the Board has added a few additional words beyond just reasonable precautions. It's reasonable precautions to protect property from foreseeable imminent harm caused by the sudden cessation of work. That, we think, has allowed the Board to say that there is a meaningful distinction between the spoilage of products that happens in the ordinary course and the type of harm that is alleged in this case. Well, but what you're saying is Garmin might not cover, may or may not cover, the fact that the milk is going to go sour or whatever it is. But we know that it doesn't, let me get these mixed up, but it does cover somebody who deliberately opens all the containers of milk and pours them down the drain. It just seems to me that intentional destruction of property is a much more serious concern than failure to take reasonable precautions, even if you want to add imminent and all that other stuff. But, as I understand your position, you want to compel Mr. Francisco's client to squeeze its intentional destruction claim into failure to take reasonable precautions. I think we must distinguish, Mr. Chief Justice, between affirmative acts like pouring the milk down the drain and merely stopping work. Now, we accept there are some circumstances in which the union chooses an inopportune moment to stop work that is unreasonable under the circumstances. And that's what our reasonable precautions test is meant to address. But if you're concerned about pouring milk down the drain or affirmative acts like that, we have no objection to the notion that that is unprotected entirely apart from the reasonable precautions test that we have been advancing. And isn't that what Mr. Francisco was saying? I mean, I guess that's why I thought this was a subset and that the reasonable precaution was problematic because it would sweep in the merely stopping, walking away, the milk spoilage scenario. I thought that the government, I was confused by why the government accepted reasonable precautions or thought it was necessary in order to come out the way you did. The reason we have used the reasonable precautions formula is not so much the words reasonable precautions, but rather the rest of the test, namely sudden cessation of work resulting in imminent and foreseeable harm. That's the part that we think is doing the work in eliminating... But why isn't that the milk scenario? I mean, I still feel like that could be inconsistent with some of our precedents. If you have a union that without deliberately timing it... I thought the real problem in some of our cases, in the molten metal case, was the sort of conspiratorial deliberate timing of this to inflict maximum property damage. But it seems to me that eminent problem to the product covers milk too. If you walk off and you know that the milk is going to spoil, why isn't reasonable precaution triggered in that case? It isn't triggered because the board has understood the concept of imminent harm not to apply. The milk is going to spoil either way if it's left there, whether or not the people leave. It's not caused by their sudden cessation of work. That's the first point. And the second point is that that is the sort of routine consequence that attends any strike. Now, I accept the verbal formulations that the board have used may not be the most perfect ones. It may be that some other words need to be used to describe those scenarios. But the key point that I would like to convey to the court is that the mere spoilage of a perishable product after people walk off from the job is not something that the striking employees can be held responsible for. Counsel, if I might return to the question of proceedings going forward and your suggestion that this should go through a hiatus in the state court. It sounds like you're suggesting to the court that that might be appropriate if a 12B1 motion or a summary judgment motion or some motion were filed before the state court and not something we should do sui sponte. Correct. Mr. Story, do you know why the board investigator took four years to file the complaint? Because it seems to me that Mr. Francisco's point about jurisdictional hiatus is there is, you know, a matter of allowing them to vindicate their tort claim, assuming it's a good one. I do, Justice Barrett. There is in the union's charge in this case a separate Bill Johnson's claim that is not at issue in this court. In other words, there were two claims that the union brought, that Mr. Francisco's client brought in state court. And potentially with respect to one of those claims that is not at issue here, there's a question about whether that was baseless and filed in a retaliatory way. And that's been resolved by the state courts. And although there's nothing in the record definitively establishing this, that is the most natural explanation for why the general counsel issued her complaint one month after the Washington Supreme Court finally resolved that issue. Is the potential for that kind of delay something that we should take account of in thinking about this jurisdictional hiatus argument, given that, you know, it could take the board quite a long time to decide whether to pursue a complaint? That delay has arisen only because of the coincidence that in this particular case, there's both a claim raising a Bill Johnson's issue and a claim raising a Garmon issue. So it's a fortuity that that has happened in this case. That wouldn't necessarily happen in the normal case. How long does something typically take? My understanding is that the board would typically take something like four to five months to get from the charge to the general counsel's complaint. And that's not all investigation. That's also settlement efforts that are being made by the general counsel and the parties. Mr. Seri, what would happen if the state court proceedings are filed, nothing is filed, the union hasn't filed anything before the board? Presumably then the state court doesn't have to stay at hand because there's nothing proceeding before the board. State court, you know, doesn't dismiss it on the pleadings, moves into discovery. Discovery is starting to happen, but it's no summary judgment motion, no opportunity yet to decide the preemption on the facts question, and then the board starts. State court just stops then? In principle, yes, but there are practical reasons why that scenario is unlikely to arise. In the first place, there's a six-month statute of limitations for filing an unfair labor practice charge with the board, and therefore it is unlikely that the charge will be filed in years after the case has begun, for example. And then once the charge has been filed, the general counsel would typically move in an expeditious fashion. So it does seem quite improbable that the board proceedings would take that long. In addition, the party asserting preemption doesn't have to wait until the general counsel's complaint is brought. We are saying that is a sufficient condition for preemption, not that it is a necessary condition. That party could simply file with the state court a motion providing the evidence, showing that the conduct is arguably protected. Tell me how to write this decision. I suggest copying our brief, Your Honor. I know, but your brief was whatever number of pages, 30-odd pages. Give it to me in two paragraphs. Summary of the argument. Summary of the argument. The National Labor Relations Act protects the right to strike, but workers have a corresponding responsibility to take reasonable precautions to prevent foreseeable imminent harm to the employer's property. In this case, accepting the allegations in the employer's complaint is true. Such precautions were not taken. Therefore, the conduct was not even arguably protected, and the Washington Supreme Court's decision is reversed. We'll go on a little bit and just say... I'm sorry. No, go ahead. I was just about to move into our next... If you would go on and say whether you would say anything, and if so, what you would say about the presence of the board complaint. I recommend that the court not address that issue because there are significant complications that the lower courts have not addressed, namely what is the relevance of the general counsel complaint in the first place. If the court wanted to address that issue, what I would recommend it say is that there is a general rule that the issuance of the general counsel's complaint suffices to establish that everything asserted in that complaint is arguably so. So if the complaint states that particular conduct is protected, then it's at least arguably protected, and that's enough for Garland preemption. Justice Thomas? We have heard the terms preemption, exhaustion, and jurisdictional hiatus. The latter two have never come up in a preemption case, to my knowledge. Is there any analogous area to this in our preemption jurisprudence? Yes, Justice Thomas. The closest analogy I have been able to find is with the Interstate Commerce Commission. The court developed the doctrine of primary jurisdiction, which required state courts under some circumstances to await the Interstate Commerce Commission's decisions as to whether a particular rate is reasonable, and that primary jurisdiction doctrine has been applied more broadly in federal courts with respect to administrative agencies. Did that disappear with the ICC? I think it's been a while since this court has applied the primary jurisdiction doctrine. That's fair. Justice Alito? Justice Sotomayor, anything further? Justice Kagan? Justice Gorsuch? I just want to quickly clarify your interchange with Justice Sotomayor and Kagan about what this opinion should say. You recommended not saying anything about the effect of the complaint before the board. So are you recommending, in the government's view, the ideal opinion would just stop at correcting the Washington Supreme Court's dismissal of the suit and not say anything about this jurisdictional hiatus part? That's correct. Justice Jackson? So if we are concerned that saying that employees have a duty to take reasonable precautions to prevent imminent foreseeable harm could subsequently be read or considered as the milk spoilage situation, that is, putting on employees the duty when they strike to pay attention to what's happening with the property and mitigate damages, if there's a concern that that formulation might lead to that, would you object in your statement of the holding to, instead of saying employees have a duty to take reasonable precautions, saying employees have a duty not to engage in a scheme to intentionally destroy the employer's property, which is what was alleged in this case, and saying that, if we think it's narrower, would the government object? We would not object so long as it's clear that by destruction of property we don't mean the milk spoiling because the workers have gone off work. If the court is concerned there is another type of qualification that it could add to its opinion, it could limit the opinion to equipment and premises of the employer. Here the trucks themselves were threatened and leave the issue of perishable products aside entirely. What about the focus on the intent, on the conspiratorial nature of this, on the attempt to hurt the employee, as opposed to just the attempt to exercise my right to strike and the incidental damage that happens to that, so be it. I accept that that is a subset of reasonable precautions, if you just focus on that part of it. We are, again, more concerned about the back half of the test, whether it's being limited in an appropriate way to make sure it doesn't sweep in spoilage. Thank you. Thank you, counsel. Mr. Dolmott. Thank you, Mr. Chief Justice, and may it please the court. Glacier sued Local 174 over a concerted work stoppage, conduct at the heart of the act's protections. Under settled law, strikers lose those protections if they fail to take reasonable precautions to avoid aggravated, imminent, foreseeable harm to employer property. Applying that test, the board has never found a forfeiture merely because perishables spoil. On the 12B record, then, this walkout was at least arguably protected as the issuance of the general counsel complaint later confirmed. The 12B record shows the union instructed the drivers to return their trucks to Glacier's facility, which all the drivers did, thereby putting Glacier in a position to use its ordinary tools for handling leftover concrete, such as reclaimers, ecology block forms, and retardants. The union also told drivers to return their trucks with the drums running. As Glacier itself observes, and this is paragraphs 3.8 and 3.9 of the complaint, the concrete does not even begin to harden until the drums stop turning. As a result, no harm came to Glacier's trucks or facility. These pleaded facts show reasonable precautions. At a minimum, there's enough evidence in the record to allow the board lawfully to conclude that it to rule in our favor, and that's all Davis requires to oust state court jurisdiction temporarily, as the Washington Supreme Court so hoped. And now that the board has taken up the case and exercised its primary jurisdiction over this labor dispute, the grounds for affirmance are even clearer. I welcome the court's questions. What if I gather disputing your friend on the other side's categorization of the conduct in this case as something a fortiori beyond the reasonable cautions moving into intentional destruction. Assuming that the facts do in fact show intentional destruction, how would you analyze that situation? So I think intent is not the critical element to the scope of the board's protection. Some intentional destruction, we certainly admit, would be unprotected. Acts of vandalism, I agree with my friend from the government, an affirmative act of vandalism, clearly unprotected. Similarly, this court held in Fansteel a takeover of employer property building that excluded the employer from access to its property, clearly unprotected. But the board has also held that a walk-off often does have an intent to cause maximum harm, to the economic harm to the employer, and sometimes, for example, in Lumbee Farms, even includes an intent to hurt perishables, and those have been held to be protected. But there certainly is a distinction between economic harm to the employer, which is at the heart of many strikes anyway, and intentional destruction of property. The difference between the milk spoiling and killing the cow. So again, take a case where not recharacterizing the claim of intentional destruction as opposed to failure to take reasonable precautions. How would that be analyzed? Or are you saying that anything like that, the infliction of economic harm, has to be squeezed into the failure to take reasonable precautions? I think the critical distinction is the nature of the conduct, whether it's an affirmative act of vandalism or whether it's the result of the withdrawal of labor. Isn't that what's being alleged here? I appreciate that distinction, but I guess I'm not sure I understand what you mean when you talk about the distinction. The allegation in this case, and you could imagine even hypothetically, is that the union certainly has the right to walk away, and if they're walking away and their responsibilities involve perishable goods that as a result of their walking away are going to spoil, then that's an incidental harm that is occurring. But you can also imagine a situation in which the union says, we have evidence, that we're going to time our walking away at the very point in which we've poured the thing that can't be recovered because if we do it at that point, we're going to destroy the machines, and that is our intent. I don't understand how that is protected and why that isn't the same as the arsonist who says, I'm going to walk away, but as I do, let me strike the match and burn down the factory. So what's always been critical to the board's cases is the extent of the harm, so the aggravated nature of the harm, the foreseeable imminence of the harm, not the intent. But I'm asking what should be. Okay, I appreciate that it hasn't been clear, but that I think is part of the problem. So in terms of the logic of this, shouldn't the line be drawn around the intent in the sense of, is the union engaging in conduct for the purpose of destroying the property of the factory, or is the union just striking, and if some of the property gets damaged because they're walking away, that's incidental, that's totally protected? So that should not be the test for two reasons, a doctrinal and a statutory. So let me give you the statutory first. Congress in Section 151, the very first section of the Act, observed that strikes generally have the, quote, intent or necessary effect, close quote, of causing a variety of economic harm, including a stoppage of the flow of raw materials and interruptions of operations, and certainly Congress was aware of perishables like cheese and milk and concrete. Okay, but that's still not getting to me. Yes, economic harm is being inflicted when you stop work. Intentionally. You intentionally stop the work, but the question is can you do something that actually intends to affect the property directly, to make the property unsalvageable. We can't get new people in here as a result of the strike and pick up where we left off because you've literally burned down the factory. We agree that you can't burn down the factory, right? We absolutely agree you cannot burn down the factory. Okay, all right. You cannot smash things. What I hear you saying is that the focus on intent is wrong because workers, unions do things all the time intentionally to maximize economic harm. You know, that if there's a seasonal component of a business, workers will try to time their strike in order to maximize the economic harm because more of the business is conducted in the summer than in the winter, and things like that, that there are all kinds of things which are perfectly intentional to maximize economic harm. And so you're saying that when we start focusing on intent without more, it pulls in pretty much every strategic decision that a union makes as to when to conduct a work stoppage. That's absolutely right, and Congress has told us in 8B which intents are off limits. Congress has proscribed certain forms of secondary economic pressure. That's an intent unions are not allowed under the law to have.  Those are certain intents that the union is not allowed to have. But what it has not done, and in this Court's decision in Curtis Brothers, the Court said the off-limits intents in 8B are the only ones that are off-limits. It doesn't regulate intents beyond those expressly proscribed, and the reason for that goes back to Section 1 because Congress recognized that inherent in the notion of a strike is an intent to inflict economic harm. That's what brings parties to resolution, the availability of the threat, as this Court recognized even before the NLRA in American Steel. And going back to Justice Jackson's question on the doctrinal point, when a state court or any court is analyzing the scope of protections to figure out if Garmin preemption should apply, it takes board law as it finds it. So this Court will certainly have the last say on the matter. The board's decisions are always subject to judicial review. Yes, I appreciate that, but can I quickly just ask you this because I understand that there are problems with perhaps focusing on intent, as Justice Kagan points out, you know, that we can identify and say are inappropriate. I want to focus on the problems that at least I see with respect to the aggravated nature of the harm. I'm actually trying to understand the difference between the union walking away and letting the milk spoil and the union in this case letting the concrete harden and letting it, you know, tear up the truck. Because at the end of the day, it all boils down to money for companies and what if the truck, you know, is not that expensive and so its replacement value is a little bit. I don't understand how we can draw the line around aggravated harm in any meaningful way when you talk about what the union is allowed to do and what they don't. So let me begin with just a couple of factual points about the record. There's been no harm to any truck in this case and Glacier alleges there was no harm to any truck or the environment or its facilities. In fact, there's $11,000 of concrete. Yes, I understand that, but just what is your position? So is your view that the union can walk away at any time, at any point, in any circumstance, no matter what the harm? What is the line for union appropriate versus not for you? The line that the board has drawn is that harm to perishables has never been sufficient to constitute aggravated harm. Now, I agree if our actions truly presented a material risk of harm to the trucks or the facility, I would agree that that would not be protected, but where I part ways with my friends at the government is that I believe they've respectfully overlooked the two key precautions that Glacier itself alleged, namely that we put the trucks back in Glacier's facility in a position where every day it deals with leftover concrete. This is JA 77 through 80, and it uses a variety of tools to do that. It uses reclaimers. These are centrifuges that separate batch concrete and allow the cement, the rock, the water to be pulled apart and used another day. Your bottom line is the concrete is a perishable. It equals the milk for the purpose of your argument. Absolutely, and their complaint alleges as much. So the concrete itself, I believe we did take precautions to avoid that, both putting it in their possession with all their ordinary tools, and also, again, 3.8 and 3.9 of their complaint, the concrete does not begin to harden until the drums stop turning, and here we put the union instructed the drivers to keep the drums running when they returned the trucks. There were 15 personnel at the Duwamish facility to handle the 20 trucks that came back in addition to managers. They were in a position to avoid harm to the concrete and to the trucks based on their own pleading. So it's our submission that at a minimum there was enough evidence from which the board lawfully could rule in our favor. Counsel, it sounds quite logical, but you didn't put this evidence in. You were relying on the allegations in the complaint, correct? Yes, but everything I've told you is in the complaint. But the complaint doesn't say all of the things you just said. The complaint says that if you keep the truck running that the concrete won't spoil. 3.8 and 3.9 of the complaint, yes, Your Honor. And the other facts that I've mentioned to you today, in Washington the complaint incorporates the declarations that Glacier itself admitted, and it also incorporates these so-called hypothetical facts, factual representations that Glacier made in its briefs. I have not mentioned a single fact to you today that is not either directly on the face of the complaint or incorporated into the complaint through Glacier's own declarations or through the hypothetical facts. How do we do with their complaint that the trucks were purposely put at risk to have the concrete harden and destroy the trucks? Well, we know that the trucks were not in fact harmed, so that's one fact. And Glacier itself has pled that fact, which you just asserted. That's true. Glacier pleads that. But it also pleads several of the precautions that we took to avoid harm to the trucks. And so given the tension in Glacier's own factual assertion... But I think the government's position is if there is tension, it's your obligation to come forth with evidence under our command in Davis that you have to submit enough evidence to enable the court to find that the conduct is arguably protected. And we're certainly allowed to rely on the other side's pleadings. In this court's decisions in Jones and in Curry, the court found... No, the pleading is simply you did this intentionally at a time to ensure that the... That's how I read the pleadings. You did it intentionally at the time to ensure that the trucks... Now, you can argue all you want that you really didn't do that, but we have to accept the complaint as is, and I think it says that you did it intentionally at a time to blow up the trucks. That the likelihood was going to be great or was going to be great. It says two things. It says what you just said, Your Honor. Once it says that, isn't it enough? No, because it also details in particular the precautions we took to avoid those very harms that it says we had in our head. So what it's alleging is we had a bad scheme in our head. Well, there were at least nine drivers that didn't tell their supervisors that the trucks were there running. According to their allegations, that's correct. But we have to accept that on its face. Absolutely, but 90% of the... So assume we get to where the SG is, which is on the face of the complaint you didn't put in enough. What remains of your argument? Meaning do we just reverse on... That's the ground that the SG is suggesting we reverse on. So if you agree with them on the first position, then I still think you should either affirm because of the issuance of the general counsel complaint, which under Davis Supermarkets shows that the board has taken up the case and is currently exercising its primary jurisdiction. Why should we make that decision? Why shouldn't the court below decide what it's going to do? Well, one reason is I think it's fundamentally undisputed between the parties. The government, and we agree here in Glacier, in clerk's paper 283 and 84 below relied on the same case, Loman's Plaza. So why don't you put in evidence like the way Davis did? Davis allows a party to either rely on the other side's admissions or... Why aren't you doing that? If we are remanded, we will certainly do that on remand, but just the other disposition, if you disagree with me that this court has, that it would be proper to address the significance of the complaint, the general counsel complaint in the first instance, I think a more appropriate disposition than a reversal is a vacatur with instructions to stay in light of the general counsel complaint. And the reason for that is that the government is essentially asking for an advisory opinion. It's asking this court to ignore current reality, and this court is often taught... I don't know if it's the government. It's certainly your adversary. Well, I think both of them are asking for a reversal is what I heard today. And so I think this court should not ignore current reality. It should take into account current reality, and it should decide the case on the narrowest grounds possible. Thank you, counsel. Thank you. Do you agree or disagree with the following statement? And this is from opposing counsel's brief. When a union deliberately orchestrates a scheme for the very purpose of destroying an employer's property, there is no plausible argument that this conduct is protected under the NLRA. I think it's an overbroad statement because property could be anything. Property could be goodwill. Property could be money. Property could be intangibles. And so stated at that level of generality, it's simply too overbroad. I think the proper test is the one that the board has articulated time and time again and that I stated at the opening, namely that a concerted action, and a concerted walk-off in order to advance wages and benefits is protected unless the strikers fail to take reasonable precautions to avoid aggravated, imminent, foreseeable harm to employer property. That's the correct test, and that's the one that squares with Section 1 of the Act. Why do you go so broadly to protect the building and equipment? Because what you're saying is letting the goods perish is okay. Well, aggravated is a key part of the test, and the board has never found spoilage of perishables to be aggravated harm. So I think the aggravated line does track what Your Honor is suggesting in terms of ---- I have not found an LRB case that has said a strike was wrong if it involved perishable products or the loss of perishable products. Correct. There is no such case. So it has to be equipment or building. That's the current law. Yes, Your Honor. I'd like to address Justice Thomas' question about jurisdictional hiatus. That concept started in Garmin itself, and this is at page 245 of the opinion. It indicates if the board decides subject to appropriate federal judicial review that conduct is protected by Section 7 or prohibited, the matter is at the end. But it goes on to say that if the board decides that an activity is neither protected nor prohibited, then it raises the question whether states can regulate that. And this Court in Sears used the concept of jurisdictional hiatus, and this Court applied it in Hannah Mining. What we have in Garmin, it is a different rule than the typical rule of preemption, but what it does is it's a choice of forum rule. It makes sure that the dispute goes to the forum that Congress chose to adjudicate a labor dispute. And their own complaint centers in paragraph 319 on the reasonable precautions test. They're fundamentally asking a state court to apply board doctrine, and the board is obviously the best institution and the institution Congress chose to apply that doctrine. Thank you, Justice Thomas. Anything further? Under your test, if the driver simply discharges the cement or stops the drums from rotating, would you agree with Petitioner? Yes, Your Honor. Okay. Now, you make the point about the jurisdictional hiatus, and as I've said before, these other terms, exhaustion and preemption, have come up. Could you give me your best textual basis for any of those, for either of those? Sure. What the Court relied on in Gus was principally 160, Section 160. We've offered in our brief two different statutory sections. Section 160 gives the board the power to adjudicate labor disputes and prevent unfair labor practices, and it carves out a limited exception to that. The exception is that the board can cede to states by agreement that jurisdiction in certain circumstances, and so in this Court's decision in Gus, it said that it read a negative inference into that exception, and it said absent a session agreement, the board is the entity Congress chose to adjudicate. There's a similar structure in Section 164. There, again, the board has primary jurisdiction over labor disputes, but it's allowed to decline that jurisdiction over a class of employers when the board finds insubstantial interstate commerce, and only at that point can the states step in and exercise jurisdiction to adjudicate labor disputes. So those two provisions are the key textual basis on which we rely. Thank you. Justice Alito? Justice Sotomayor? Justice Jackson? Thank you, Counsel. Thank you, Your Honor. Rebuttal, Mr. Francisco? Thank you, Mr. Chief Justice. Just four basic points. First, this is not a case about the mere stoppage of work. Here, the union had the workers show up, accept possession of the concrete, begin deliveries of the concrete, abandon those deliveries when it was too late to save the concrete, and then countermand supervisor instructions to complete the deliveries that had already been started, which at that point in time was the only way to save the concrete. It's really no different than the riverboat crew that drives out into the middle of the river and then abandons ship. That is not merely a stoppage of work. Now, my friend draws a distinction between the trucks on the one hand and the concrete on the other. Well, imagine the ferry boat that's loaded with the trucks. Are they suggesting that you couldn't destroy the ferry boat, but you could destroy the trucks? The fact of the matter is that our complaint alleges destruction of the concrete, not the trucks. It may be that keeping the drums rotating delayed or avoided the destruction of the trucks for a certain amount of time. It didn't avoid the destruction of the concrete because once concrete is batched up, it's got to be delivered and used or else it's going to spoil. You can add chemicals to slow down that process, but adding the chemicals themselves undermine the integrity of the concrete. So once they were batched and loaded, they had to be delivered or abandoned. They put us in a position of putting that concrete in a vulnerable position precisely so they could abandon it. This is not a mere stoppage of work. Point two, my friend from the government relied on the Longshoremen against Davis case. That case did not involve any disputed facts. That was a case about the difference between the meaning of the word supervisors versus employees. The union never put in any evidence at all that the people at issue fell within the, I think it was the employee category, and the court simply said that on the basis of the facts as we have them, it's an arguable question. That's exactly how we think that the court ought to proceed in this context. The only case, and this is my third point, the only case that this court has issued that comes close to addressing these facts is the Bill Johnson decision, where you did have a complaint on the one hand in state court alleging malicious, liable, clearly unprotected conduct, and you had a board finding on the other hand that the allegations in the complaint were false. Now my friend from the government suggests that Bill Johnson isn't on point. I would submit precisely the opposite. The whole issue in Bill Johnson's was whether the board could issue a cease and desist order against the state court. Well, under the government and the union's position, it shouldn't have even had to do that. The board should have been required to pause that proceeding, the jurisdictional hiatus, because the board had issued findings that the allegations in the state court complaint were true. Even if you were to think that it's not on all fours, it's the closest decision that this court has ever issued that's even remotely on point, which leads me to my final point. In the face of that precedent, why on earth would you take Garmin any further than you've already taken it? All we're asking for is an application of Garmin in the context of ordinary preemption principles. I think it's quite clear that they're asking at the very least that you take it a step further than it's ever gone, that would bring it into greater tension with ordinary preemption principles, and I've yet to hear a reason grounded in the text of the statute, precedent, or practical concerns that would justify ousting a state court of the ordinary authority to adjudicate a tort claim in the ordinary course where a complaint alleges conduct that, as we and the government agree, doesn't even arguably implicate the statute. Thank you, counsel. The case is submitted.